```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
DAVID WEXLER,                                                    :
                                                                 :
                                  Plaintiff,                     :
                                                                 :        REPORT &
                         -against-                               :        RECOMMENDATION
                                                                 :
                                                                 :        20-CV-2103 (RPK)(PK)
                                                                 :
VOS IZ NEIAS LLC,                                                :
                                                                 :
                                  Defendant.                     :
                                                                 :
                                                                 :
---------------------------------------------------------------- x
```

**Peggy Kuo, United States Magistrate Judge:**

David Wexler ("Plaintiff") brought this action against Vos Iz Neias LLC ("Defendant" or "VIN") for copyright infringement under Section 501 of the Copyright Act, and for the removal and/or alteration of copyright management information under Section 1202(b) of the Digital Millennium Copyright Act ("DMCA"). (Compl., Dkt. 1 at 1.) Plaintiff filed a Motion for Default Judgment against VIN. ("Motion," Dkt. 15.)

The Honorable Roslynn R. Mauskopf referred the Motion to the undersigned for a report and recommendation.[1] For the reasons stated herein, the undersigned respectfully recommends that the Motion be GRANTED in part and DENIED in part.

## BACKGROUND

**I.   Factual History**

The following facts are taken from the Complaint, Plaintiff's counsel James H. Freeman's Declaration in Support of Motion for Default Judgment ("Freeman Decl.," Dkt. 17), and the Supplemental Declaration of James H. Freeman ("Supp. Freeman Decl.," Dkt. 20) and are accepted

---

[1] On July 12, 2021, the case was reassigned to The Honorable Rachel P. Kovner.

1

as true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor). The webpages referenced and linked to in the Complaint were also viewed. (Compl. ¶¶ 6, 8, 11).

Plaintiff is a professional photographer in Suffolk County, New York. (Compl. ¶ 5.) Defendant is a New York limited liability company transacting business in the State of New York. (*Id.* ¶ 6.) Defendant owns and operates the website www.VosIZNeias.com (the "Website").[2] (*Id.*)

Plaintiff took photographs of David Atali and the anti-Semitic imagery he received while working at the New York Police Department ("NYPD"). (*See id.* ¶ 7; *see also* "Photographs," Ex. A to the Compl., Dkt. 1-1.) On January 21, 2015, the Photographs[3] were initially published in an article in the New York Daily News ("Daily News Article," Ex. B to the Compl., Dkt. 1-2).[4] (Compl. ¶ 8; Freeman Decl. ¶ 5.) The Daily News had obtained a license from Plaintiff to use the Photographs. (Compl. ¶ 8.) In the "gutter credits" below the Photographs, the photographer is identified as "David Wexler For New York Daily." (*Id.*; *see* Daily News Article at 1, 3–4.)

On the same day, Defendant published an article on the Website titled "New York, NY – Former NYPD Jewish Cop Suing City Over Anti-Semitic Comments, Vandalism" ("Defendant's Article," Ex. C to the Compl., Dkt. 1-3) (*also available at* https://vosizneias.com/2015/01/21/new-york-ny-former-nypd-jewish-cop-suing-city-over-anti-semitic-comments-vandalism/?comments_

---

[2] As of the date of this Report and Recommendation, the website now automatically redirects to the homepage of www.vinnews.com.

[3] The Freeman Declaration describes a single "Photograph," but the Complaint describes multiple photographs and Exhibits A and B to the Complaint show two photographs.

[4] John Marzulli, *EXCLUSIVE: In lawsuit, former NYPD officer says he was subjected to anti-Semitic attacks at World Trade Center police command*, N.Y. DAILY NEWS (Jan. 21, 2015 2:30 AM), available at: https://www.nydailynews.com/new-york/ex-nypd-made-life-living-heil-article-1.2086167 (last accessed August 4, 2021). (*See* Compl. ¶ 8.)

2

sort=desc) (last accessed August 3, 2021.) (Compl. ¶ 11; Freeman Decl. ¶ 6.)[5] Defendant's Article featured the Photographs with the gutter credits removed. (Compl. ¶¶ 11, 21; Freeman Decl. ¶¶ 6–7.) Defendant's Article also summarized the Daily News article, provided a link to the Daily News article, and included the attribution, "Information taken from NY Daily News." (Defendant's Article.)

Plaintiff subsequently registered the Photographs, along with 162 other photographs, with the United States Copyright Office and was issued Registration Number VA 2-062-309 (the "Registration") for all 164 photographs. (*See* Compl. ¶ 10; *see* Ex. D to Freeman Decl., Dkt. 17-4 at 1; Supp. Freeman Decl. ¶¶ 3-4; Ex. A to Supp. Freeman Decl., Dkt. 20-1 at 1.) The Registration became effective on August 15, 2017. (Ex. D to Freeman Decl. at 1; Ex. A to Supp. Freeman Decl. at 1.)

Plaintiff became aware of Defendant's usage of the Photographs in May 2020. (Compl. ¶ 13.) Defendant did not license the Photographs from Plaintiffs, and Plaintiff did not license, authorize, or consent to Defendant reproducing the Photographs on the Website. (Compl. ¶¶ 12, 15; Freeman Decl. ¶ 8.)

## II. Procedural Background

Plaintiff filed the Complaint on May 7, 2020. (Dkt. 1.) Plaintiff served a copy of the Summons and Complaint on Defendant via the New York Secretary of State, consistent with N.Y. Bus. Corp. Law § 306(b). (Dkt. 6.) After Defendant did not respond to the Complaint, Plaintiff requested a Certificate of Default (Dkt. 10), which the Clerk of Court entered on September 15, 2020 (Dkt. 11).

Plaintiff filed the Motion and supporting papers on December 17, 2020. (Dkts. 15–19.) Plaintiff filed the Supplemental Freeman Declaration on August 2, 2021. (Dkt. 20.)

---

[5] Plaintiff submitted screenshots of the article, bearing Plaintiff's photographs, instead of the full article. However, Plaintiff also provided the link to Defendant's Article in the Complaint. (Compl. ¶ 11; Freeman Decl. ¶ 6.)

## DISCUSSION

### I. Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A plaintiff must take several steps before the court will grant default judgment. The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations omitted). The plaintiff must establish compliance with the procedural requirements of Local Civ. Rules 7.1 and 55.2.

The court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84. "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established ...." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II. Jurisdiction

### A. Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1331, the Court has original jurisdiction over Plaintiff's claims brought under the Copyright Act, 17 U.S.C. §§ 106 and 501 and the DMCA, 17 U.S.C. §§ 1202 and 1203.

### B. Service on the Defendant

Plaintiff properly served Defendant by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State. *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed. R. Civ. P. 4(h)(1)(B). (Dkt. 6.)

### C. Personal Jurisdiction

"Serving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)). New York State has general jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).

Plaintiff properly served Defendant, a New York limited liability corporation with a place of business in Brooklyn, New York (Compl. ¶ 6), and therefore the Court's exercise of jurisdiction over it is proper.

## III. Procedural Compliance with Local Civil Rules 7.1 and 55.2

Plaintiff filed the following documents in support of the Motion: a copy of the Complaint

(Dkt. 17-1), an affidavit by counsel in support of the Motion, attaching exhibits (Dkt. 17), the Certificate of Default (Dkt. 17-3), a Memorandum of Law in Support of the Motion ("Memorandum of Law") (Dkt. 16), a proposed judgment (Dkt. 18), and a certificate of service of the Motion papers by mail to Defendant's last known business address (Dkt. 19). These documents comply with Local Civil Rules 7.1 and 55.2.

## IV. Liability

### A. Liability Under the Copyright Act

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying [by the defendant] of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see Hirsch v. F. Daily Inc.*, No. 18-CV-6531 (LDH)(SJB), 2021 WL 1158562, at *4 (E.D.N.Y. Feb. 9, 2021), *R&R adopted*, 2021 WL 1163153 (E.D.N.Y. Mar. 26, 2021) (quoting *Feist Publ'ns, Inc.*).

To satisfy the first element, "[a] certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (citing 17 U.S.C. § 410(c)) (alteration added) (other citations omitted). The certificate of registration is valid if made "before or within five years after first publication of the work." 17 U.S.C. § 410(c).

Plaintiff submitted a copy of the Certificate of Registration Number VA 2-062-309, which became effective August 15, 2017. (Ex. D to the Supp. Freeman Decl.) The Certificate lists the copyrighted works, including the Photographs. (*Id.* at 1 (highlighting the file names of the photographs in the Registration); Supp. Freeman Decl. at 3-4 (identifying the file names of the photographs).)

Such evidence is sufficient in the context of a default judgment. *See Hirsch*, 2021 WL 1158562 at *4. Thus, Plaintiff has shown that he is the owner of the copyright of the Photographs.

"To satisfy the second element, a plaintiff 'must demonstrate that: (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work].'" *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quoting *Yurman Design, Inc. v. PAJ Inc.*, 262 F.3d 101, 110 (2d Cir. 2001) (emphasis in original)). This test is met when an alleged infringer reproduces a photograph without permission. *See, e.g., Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 425 (S.D.N.Y. 2018); *Hirsch*, 2021 WL 1158562 at *4. Here, the photographs used in Defendant's Article are the same as the Photographs that were published in the Daily News Article. (*Compare* Defendant's Article *with* Daily News Article.) Plaintiff did not authorize the publication of the Photographs in Defendant's Article. (Compl. ¶¶ 12, 15; Freeman Decl. ¶ 8.) Thus, the second element is also met.

Because Defendants' default constitutes a concession of all well-pleaded allegations concerning liability, *see Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158, the undersigned finds that Plaintiff has established Defendant's liability for copyright infringement.

**B.     Liability Under the DMCA**

The DMCA provides that "[n]o person shall, without the authority of the copyright owner or the law[, ]intentionally remove or alter any copyright management information . . . ." 17 U.S.C. § 1202(b). "Copyright management information" ("CMI") includes the information identifying the author and the copyright owner of a work. *See id.* § 1202(c).

To prevail on a DMCA claim,

> A plaintiff must thus prove the following: (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant "distribute[d] … works [or] copies of works"; (3) while "knowing that [CMI] has been removed or altered without authority of the copyright owner or the law"; and (4) while "knowing, or … having reasonable grounds to know" that such distribution "will induce, enable, facilitate, or conceal an infringement."

*Mango v BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (quoting 17 U.S.C. § 1202(b)) (omission and other alterations in original).

7

As to the first element, the text, "David Wexler For New York Daily," was included in the gutter credit below the Photographs in the Daily News Article. (Compl. ¶ 8; *see* Dkt. Daily News Article at 1, 3–4.) This gutter credit, which "identified [Plaintiff] as the author of the Photograph[s] and was conveyed in connection with the Photograph[s'] publication," constitutes CMI. *See Hirsch*, 2021 WL 1158562 at *5; *see also Mango*, 970 F.3d at 172-173.

Plaintiff has shown that Defendant distributed copies of the Photographs on its Website as part of Defendant's Article. (Compl. ¶¶ 11–12; Freeman Decl. ¶¶ 6-7.)

With regard to the remaining elements, Plaintiff alleges that Defendant "intentionally and knowingly removed" the gutter credits "without the knowledge or consent of Plaintiff." (Compl. ¶¶ 21, 23; Freeman Decl. ¶ 7.) Plaintiff further alleges that this was done "with the intent to induce, enable, facilitate, or conceal [Defendant's] infringement of Plaintiff's copyright in the Photographs." (Compl. ¶ 24.) Defendant "knew, or should have known, that such falsification, alteration and/or removal of said copyright management information would induce, enable, facilitate, or conceal their infringement of Plaintiff's copyright in the Photographs." (*Id.*)

Although these allegations are based "[u]pon information and belief," a court in considering a motion for default judgment may draw all reasonable inferences in favor of the non-defaulting party. *See Finkel*, 577 F.3d at 84. Because Defendant's Article specifically references the Daily News Article, the Court can reasonably infer that Defendant obtained the Photographs from the Daily News Article. It can also infer that Defendant, in reprinting the Photographs, removed the gutter credits containing Plaintiff's name, knowing that Plaintiff did not consent and knowing, or having reason to know, that its removal would conceal the infringement.

Accordingly, the undersigned finds that Plaintiff has sufficiently established all the elements of his DMCA claim. *See Wexler v. Synergy Prep, Inc.*, No. 20-CV-2672 (CBA)(SMG), 2021 WL 260635,

at \*2 (E.D.N.Y. Jan. 3, 2021), *R&R adopted*, 2021 WL 260101 (E.D.N.Y. Jan. 26, 2021) (finding nearly identical claims established liability under the DMCA).

### V. Requested Relief

#### A. Damages

##### 1. *Actual Damages Under the Copyright Act*

Plaintiff seeks $375 in actual damages for the copyright infringement claim. (Memorandum of Law at 7–9; Freeman Decl. ¶¶ 17, 21–22). "In calculating actual copyright damages, Courts often look to lost licensing fees and 'rely upon the market value of the fee the owner was entitled to charge for such use.'" *See Fleishman v. World Bride Mag., LLC*, No. 19-CV-5595 (EK)(LB), 2020 WL 7774843, at \*4 (E.D.N.Y. Oct. 27, 2020), *R&R adopted*, 2020 WL 7770936 (E.D.N.Y. Dec. 30, 2020) (quoting *Pasatieri v. Starline Prods., Inc.*, No. 18-CV-4688 (PKC)(VMS), 2020 WL 207352, at \*4 (E.D.N.Y. Jan. 14, 2020) (*Pasatieri I*) (other internal quotations omitted). Such an award must be reasonable and "may not be based on undue speculation … The question is not what the owner would have charged, but rather what is the fair market value." *On Davis v. Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001) (internal quotation and citation omitted).

To support his request of actual damages, Plaintiff submitted a screenshot from the website GettyImages.com (which he characterized as "the leading stock photography agency") depicting a photograph taken by a different photographer, Homer Sykes. (Memorandum of Law at 9; Freeman Decl. ¶ 21; the "Sykes Photograph", Ex. E to Freeman Decl., Dkt. 17-5.) Plaintiff contends that the Sykes Photograph is similar to the Photographs, and that the price captured in the screenshot, $375, constitutes a "benchmark licensing fee[]" indicating "what Plaintiff would have been reasonably entitled to charge" for the Photographs. (Memorandum of Law at 9; Freeman Decl. ¶ 21; Sykes Photograph.)

Plaintiff's counsel has offered screenshots from GettyImages.com as proof of damages in other cases in this Circuit, with mixed results. *See, e.g.*, *Fleishman*, 2020 WL 7774843, at 4-5 (denying request for actual damages where plaintiff only submitted screenshot from Getty Images without a supporting affidavit from Plaintiff); *Pasatieri v. Starline Prods., Inc.*, No. 18-CV-4688 (RPK)(VMS), 2020 WL 5913190, at *2 (E.D.N.Y. Oct. 6, 2020) ("*Pasatieri II*") (denying request for actual damages where plaintiff submitted affidavit and screenshot from Getty Images); *Terry v. Masterpiece Advert. Design*, No. 17-CV-8240 (NRB), 2018 WL 3104091, at *2-5 (S.D.N.Y. June 21, 2018) (relying on Getty Images pricing to determine fair market value but reducing amount awarded to $1,560 from plaintiff's requested $10,000); *Cuffaro v. Fashionisto LLC*, No. 19-CV-7265 (GBD)(KHP), 2020 WL 5077449, at *3 (S.D.N.Y. July 9, 2020), *R&R adopted*, 2020 WL 5076826 (S.D.N.Y. Aug. 27, 2020) (finding evidence from Getty Images persuasive where both images were "black and white shots of the same subject" and awarding actual damages); *Romanowicz v. Alister & Paine, Inc.*, No. 17-CV-8937 (PAE)(KHP), 2018 WL 4762980, at *3-5 (S.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4759768 (S.D.N.Y. Oct. 1, 2018) (granting award of actual damages based on plaintiff's affidavit and Getty Images licensing fee of $480 for similar photograph); *Olusola v. Don Coqui Holding Co.*, No. 19-CV-6909 (MKB)(JO), 2020 WL 8771246, at *4 (E.D.N.Y. Oct. 8, 2020), *R&R adopted in part and modified in part on other grounds*, 2021 WL 631031 (E.D.N.Y. Feb. 18, 2021) (granting lowest licensing fee on Getty Images website based on plaintiff's declaration and Getty Images screenshot); *McDermott v. NYFireStore.com, Inc.*, No. 18-CV-10853 (AJN)(SLC), 2021 WL 952455, at *3 (S.D.N.Y. Jan. 15, 2021), *R&R adopted*, 2021 WL 950507 (S.D.N.Y. Mar. 12, 2021) (finding differences between stock photos on Getty Images and plaintiff's photograph immaterial and awarding plaintiff the requested $5,000 in statutory damages based on Getty Images pricing); *Schwartzwald v. Zealot Networks, Inc.*, No. 19-CV-5979 (LDH)(SMG), 2020 WL 8187749, at *3-4 (E.D.N.Y. Dec. 27, 2020), *R&R adopted*, 2021 WL 173996 (E.D.N.Y. Jan. 19, 2021) (awarding actual damages of $2,500 based on plaintiff's affidavit and

evidence of Getty Images licensing fee); *Verch v. Nocturnal Times, LLC*, No. 19-CV-5912 (RPK)(RER), 2020 WL 7632089, at *2 (E.D.N.Y. Oct. 12, 2020), *R&R adopted*, 2020 WL 7625415 (E.D.N.Y. Dec. 22, 2020) (awarding actual damages of $1,500 based on Plaintiff's affidavit and Getty Images licensing fee for similar photograph).

Plaintiff's reliance on the licensing fee for a "similar" photograph listed on GettyImages.com to ascertain the fair market value of the Photographs is both inadequate and inexplicable.

Plaintiff's counsel states that the Sykes Photograph is similar to the Photographs "to the extent it involves depictions of the NYPD and protests against discrimination." (Freeman Decl. ¶ 21.) But the Sykes photograph, taken in 1999, was black and white, depicts a woman wearing a "Smash the Klan" banner around her neck handing a flower to an officer sitting in an NYPD vehicle, and appears to be captured naturally in public and unposed. (Dkt. 17-5.) In contrast, one of the Photographs depicts former NYPD officer David Atali seated in a conference room holding up papers that show screenshots of text messages containing a photograph of Adolf Hitler and a text message "Lol [Laugh out loud]." The other Photograph depicts what appears to be a photograph of Atali's locker, with various stickers, and a newspaper headline reading, "Hail Hitler." (Ex. A to Compl.) There is hardly *any* similarity between the Sykes Photograph and Plaintiff's Photographs in theme or content. *See, e.g.*, *Olusola*, 2020 WL 8771246 at *4 (declining comparison between stock photograph and infringed photograph that shared the same subject).

Moreover, Plaintiff's counsel does not indicate what parameters he selected on the Getty Images website to generate the licensing fee. The screenshot of the Getty Images website with the Sykes Photograph shows licensing fees for different size photographs for "standard editorial rights," but does not specify any other parameters, such as use, circulation and length of time. *See Terry*, 2018 WL 3104091 at *3-4 (noting that Getty Images fees are dependent upon factors such as use, circulation, and length of time).

11

Plaintiff's roundabout way of supporting the "fair market value" of the Photographs is puzzling given that he claims to have actually licensed the Photographs to the New York Daily News, a well-known publication with a presumably wide circulation. There is no need to create a hypothetical market for Plaintiff's works when a real market existed, and there was an actual fee paid. Knowing the licensing fee that the New York Daily News paid to Plaintiff for the Photographs would be a good starting point for determining the fair market value of the Photographs, and would obviate the need to engage in speculation by invoking the licensing fee for a dissimilar work. For whatever reason, Plaintiff has chosen not to submit that information to the Court. *See Seelie v. Original Media Grp. LLC*, No. 19-CV-5643 (BMC), 2020 WL 136659, at *5 (E.D.N.Y. Jan. 13, 2020) (plaintiff's decision to withhold his actual licensing fee from the court suggests that his usual fee may be significantly lower than the damages requested).

The undersigned finds that Plaintiff has not shown that he is entitled to actual damages of $375. The photograph proffered from GettyImages.com is too dissimilar to the Photograph to constitute a valid point of comparison for a licensing fee. In the absence of any other evidence of fees for the Photographs or comparable works, the undersigned finds that there are no "points of reference that even hint at an appropriate fair market value for the licensing fee Plaintiff could or would have charged Defendant for its use of the Photograph[s]." *See Pasatieri I*, 2020 WL 207352, at *4. The undersigned therefore respectfully recommends that Plaintiff's request for actual damages be denied at this time.

        2.    *Statutory Damages Under the DMCA*

For the DMCA violation, Plaintiff seeks $10,000 in statutory damages rather than actual damages. (Mem. Supp. Mot. at 9–10, 13; Freeman Decl. ¶¶ 18, 24.) Under the DMCA, "a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B). "In awarding statutory

damages under the DMCA, courts 'consider [several] factors ..., namely, the difficulty of proving actual damages, the circumstances of the violation, whether [d]efendants violated the DMCA intentionally or innocently, and deterrence.'" *Hirsch*, 2021 WL 1158562 at *8 (quoting *Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014) (alterations in original)).

Plaintiff did not submit any documentation that would assist this Court in evaluating these factors. Rather, Plaintiff attached several orders from other courts in this Circuit awarding $10,000 in statutory damages for DMCA violations. (Memorandum of Law at 10; Freeman Decl. ¶ 24; Dkt. 17-6.) This information, which Plaintiff's counsel has submitted in support of similar motions to district courts in this Circuit, does not "explain[] why the orders [] attache[d] are appropriate comparisons," *Jerstad v. New York Vintners LLC*, No. 18-CV-10470 (JGK)(OTW), 2019 WL 6769431, at *4 (S.D.N.Y. Dec. 12, 2019), *R&R adopted*, 2020 WL 58237 (S.D.N.Y. Jan. 6, 2020), and does not provide the Court with any insight into "how those courts arrived at that figure." *Seelie*, 2020 WL 136659, at *3. "For every case that plaintiff cites that awarded the same amounts he is seeking, there are more cases awarding different amounts …." *Id.*

"[B]ecause Plaintiff would have difficulty showing actual damages for removal of the gutter credit[s] and has not made much of an effort to support a damages figure," *see Jerstad*, 2019 WL 6769431, at *4, the undersigned respectfully recommends that the minimum statutory damages amount of $2,500 be awarded for each violation of the DMCA, for a total of $5,000 for the two violations.

### B. Attorneys' Fees, Costs, and Post-Judgment Interest

In addition to the damages, Plaintiff also seeks: (1) $420 in attorney's fees at an hourly rate of $350; (2) $440 in costs, comprised of $400 for the filing fee and $40 for service of process; and (3) post-judgment interest. (Memorandum of Law at 10–13; Freeman Decl. at 5–6.)

13

1. *Attorneys' Fees*

Although the Motion seeks attorneys' fees under the DMCA, 17 U.S.C. § 1203(b)(5), Plaintiff's Memorandum of Law references only the Copyright Act.  (*See* Memorandum of Law at 10.)  Under Section 412 of the Copyright Act, a plaintiff is not entitled to attorney's fees for

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412.  Here, both the first publication of the Photographs and Defendant's unauthorized used occurred on January 21, 2015, which is well over three months before the date the Registration became effective, August 15, 2017.  (Compl. ¶¶ 8, 11; Freeman Decl. ¶¶ 5, 6; *see* Daily News Article; Defendant's Article; Ex. D to Freeman Decl. at 1.)  Plaintiff is therefore not entitled to attorneys' fees under the Copyright Act.

However, Plaintiff may recover attorney's fees under the DMCA.  17 U.S.C. § 1203(b)(5).  Such an award is discretionary.  *Id.*  The Second Circuit bases fee awards on the "presumptively reasonable fee."  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).  Courts calculate the presumptively reasonable fee according to the "lodestar" method by "multiplying the number of hours reasonably billed ... by the appropriate hourly rate."  *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 n.4 (2d Cir. 2008).

Plaintiff seeks $420.00 in fees for 1.2 hours of work by attorney James Freeman, at a rate of $350.00 per hour.  (Freeman Decl. ¶¶ 25-27.)

In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours."  *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).  Here, Freeman documented 1.2 hours of work in "[d]raft[ing] motion for default judgment, including attorney declaration and memo of law."  (Freeman Decl. at 5.)  The Memorandum of Law

14

counsel submitted here is almost identical to the memoranda submitted by Freeman in other copyright cases in this District. *See, e.g., Bekiempis v. Hyperfresh Magazine, Inc.* No. 20-CV-2350 (FB)(RLM) (Mar. 23, 2021), ECF No. 23*; Hirsch v. Forsythe Media Grp. LLC*, No. 20-CV-2538 (JMA)(AKT) (Jan. 22, 2021), ECF 12 at 21–24; *Wexler v. USIC Locating Servs, LLC*, No. 20-CV-1370 (DRH)(ARL) (Jan. 22, 2021), ECF 12 at 5–10, 21–24; *Haker v. Tentree Int'l Inc.* No. 20-CV-1499 (KAM)(RML) (Jan. 11, 2021), ECF No. 15 at 19–21. Furthermore, Freeman's argument for awarding attorneys' fees, repeated verbatim from these other memoranda, was entirely based on the Copyright Act, under which Plaintiff is not entitled to fees. Lastly, the Statement of Facts in the Memorandum of Law is identical to the same section in counsel's declaration. (*Compare* Freeman Decl. ¶¶ 3–9 *with* Mem. Supp. Mot. at 1–2.) Nevertheless, 1.2 hours is not an unreasonable request even for a boilerplate submission.

The appropriate hourly rate is the rate a "reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnt'y. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008). Freeman is an associate at the Liebowitz Law Firm and has "twenty years of substantial experience in the field of intellectual property law." (Freeman Decl. ¶ 26.) Courts in this district have found $350.00 to be a reasonable rate for less-experienced attorneys in similar copyright cases. *See, e.g., Jeremiah v. H Squared Media Grp. LLC*, No. 18-CV-5572 (JMA)(AYS), 2021 WL 930223, at *3 (E.D.N.Y. Mar. 11, 2021) (citing *Farrington v. Sell It Soc., LLC*, No. 18-CV-11696 (JPC), 2020 WL 7629453, at *4 (S.D.N.Y. Dec. 21, 2020) and *Wexler v. Synergy Prep, Inc.*, No. 20-CV-2672 (CBA)(SMG), 2021 WL 260635, at *5 (E.D.N.Y. Jan. 3, 2021), *R&R adopted*, 2021 WL 260101 (E.D.N.Y. Jan. 26, 2021); *Dermansky v. Tel. Media, LLC*, No. 19-CV-1149 (PKC)(PK), 2020 WL 1233943, at *7 (E.D.N.Y. Mar. 13, 2020) (all awarding Richard Liebowitz, a partner at the Liebowitz Law Firm with significantly less experience than Freeman, $350.00 per hour). The undersigned therefore finds that Freeman's requested rate of $350.00 is reasonable.

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $420.00 for the 1.2 hours reasonably spent on the Memorandum of Law and attorney declaration.

2. *Costs*

Plaintiff seeks $440 in costs, including $400 for the filing fee and $40 for service of process. (Memorandum of Law, at 12; Freeman Decl. at 5–6.)

A Court may generally award certain costs pursuant to 28 U.S.C. § 1920. The Copyright Act also provides for recovery of costs. 17 U.S.C. § 505. "[T]he party moving for costs bears the burden of demonstrating the reasonableness of each charge ... Filing fees are recoverable without supporting documentation if verified by the docket… Process server fees are also recoverable but must be supported by documentation." *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 218–19 (E.D.N.Y. 2019).

Plaintiff's filing fee is noted on the docket. (Dkt. 1.) Plaintiff also provided documentation of the process server fee. (Dkt. 6.) The undersigned therefore respectfully recommends that Plaintiff be granted costs of $440.

3. *Post-Judgment Interest*

Plaintiffs seeks an award of post-judgment interest at the statutory rate pursuant to 28 U.S.C. § 1961. (Mem. Supp. Mot. at 13.) Pursuant to Section 1961(a), "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 543 (2d Cir. 1996). Therefore, the undersigned respectfully recommends that an award of post-judgment interest be granted.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that the Motion be granted as to liability, and that damages be awarded in part and denied in part. Specifically, the undersigned recommends:

(1) Granting Plaintiff's request for a default judgment against Defendant for copyright infringement under 17 U.S.C. § 501;

(2) Granting Plaintiff's request for a default judgment against Defendant for unauthorized alteration and/or removal of copyright management information in violation of 17 U.S.C. § 1202(b);

(3) Denying Plaintiff's request for actual damages under 17 U.S.C. § 504(b), with leave to renew with supporting evidence within 30 days of this Court's decision;

(4) Granting Plaintiff's request for statutory damages under 17 U.S.C. § 1203(c)(3)(B) in the amount of $5,000;

(5) Granting Plaintiff's request for $420.00 in attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5), and $440.00 in costs pursuant to 28 U.S.C. § 1920 and 17 U.S.C. § 505; and

(6) Granting Plaintiff's request for post-judgment interest under 28 U.S.C. § 1961.

Plaintiff is directed to serve this Report and Recommendation on Defendant forthwith and file proof of service on the docket by August 6, 2021. Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         August 4, 2021